## TENANT HOLDING OVER BECOMES LIABLE FOR YEAR'S RENT.

Court of Appeals for Hamilton County.

MARTIN J. RICKARD v. JAMES W. UTTER.

Decided, February 14, 1916.

*Landlord and Tenant—Latter Holds Over on Promise of Repairs, and Becomes Liable for Year's Rental—Retention of Key by Landlord Not an Acceptance of Surrender, When.*

1. Where a tenant by the year holds over, and thereafter there are negotiations regarding a new lease but none is executed, the negotiations regarding the new lease in no way operate to relieve the tenant from the obligation for another year's rental which he assumed by holding over.
2. Failure on the part of a landlord to make promised repairs does not release the tenant from the obligations of his lease, but his remedy is by way of an action for damages for failure to carry out the agreement to make repairs.
3. Retention by the landlord of the key to the premises sent to him through the mail does not constitute an acceptance of the surrender of the lease.

*A. R. Hoffman* and *Powell & Smiley,* for plaintiff in error.
*Hunt, Bennett & Utter,* contra.

CHITTENDEN, J.

This action was begun in the Municipal Court of Cincinnati by James W. Utter to recover from the defendant, Martin J. Rickard, an amount claimed to be due upon a lease of real estate. The facts are substantially as follows:

On February 9, 1910, the plaintiff and the defendant entered into a written lease for a residence belonging to the plaintiff, for one year from February 15, 1910, with the privilege of renewal for one year. The defendant agreed to pay therefor the sum of $50 per month, payable each month, beginning March 15, 1910. At the expiration of the first year the defendant exercised his option of renewal and remained another year. Without any further agreement, he continued in the occupancy

of the property for the third year, and, without any further arrangement being made, he entered upon the fourth year. Some time in March, 1913, probably about the 9th of the month, pursuant to an invitation from the defendant, the plaintiff went to the leased premises and there discussed with the defendant certain repairs that were desired, and agreed that such repairs would be made. At the same time there was a discussion concerning the executing of a new lease, and the defendant testifies that he agreed to execute a new written lease for one year from April 1, 1913, upon condition that the repairs that had been agreed upon should be made within a reasonable time. The evidence is not in conflict, on any material matter, as what was stated on this occasion, the plaintiff, however, claiming that while he agreed to make the repairs desired, the making of such repairs was not a condition to the executing of the new lease. At any rate, the plaintiff very shortly thereafter had a lease prepared in duplicate, for one year from April 1, 1913, and signed the same and sent them to the defendant. The defendant says that when he examined the lease he discovered that there was no condition in it relating to the repairs that had been agreed to be made, and thereupon he retained possession of the lease until he found that the repairs were not being made within a reasonable time, when he returned the lease to the palintiff; and, on April 30, 1913, wrote to the plaintiff, saying that he had purchased a house and that he would vacate the premises to the plaintiff by the middle of the next month. He in fact did vacate the premises before the middle of May, and, on the fourteenth day of May, sent to the plaintiff a check for the rent due on the fifteenth day of May, and also enclosed with the check a key to the premises.

The plaintiff testifies that he acknowledged receipt of the check and advised the defendant that he would hold him for the remainder of the year, that is, until the 15th day of February, 1914. The defendant denies receiving any such letter. The plaintiff testifies that he did then take possession of the house, and made necessary repairs and used every reasonable means to obtain a tenant, but that he was unable to do so prior to

February 15, 1914. It is the rent, at the agreed rental, from May 15, 1913, to February 15, 1914, that the plaintiff seeks to recover.

It should be added that at the conference between the plaintiff and the defendant on March 9, 1913, it was understood that Mrs. Utter should call upon Mrs. Rickard soon and determine just what repairs were required by Mrs. Rickard. Mrs. Rickard does not testify, but Mrs. Utter testifies that she did call upon the wife of the defendant and went over the matter of repairs, and that Mrs. Rickard stated that because of their having a small baby in the house, she did not want the repairs undertaken until the first of May. We think this statement of facts is sufficiently full to show the questions involved.

The case was tried to a jury in the municipal court, and upon motion made by the plaintiff at the close of all the evidence, court directed a verdict in favor of the plaintiff for the amount claimed by him. Upon proceedings in error in the common pleas court the judgment entered on such verdict was affirmed.

This court is of opinion that the judgment is right, and that the facts would not justify any other conclusion, and that, upon the ground that substantial justice has been accomplished, the judgment should be affirmed.

A majority of the court are of the opinion that the judgment should be affirmed upon the additional ground that there is no evidence on behalf of the defendant tending to establish a legal defense to the claim of the plaintiff.

The law as to the effect of holding over under the terms of a written lease is so well settled in this state that the authorities need not be reviewed or even cited. We find that when the defendant held over after February 15, 1913, he became bound for another year in accordance with the terms of the original written lease. Thereafter a new lease for a different term was proposed and in fact agreed upon, but it was never consummated by the proper execution of the new lease by both parties, or by any change of possession that could be referable to that lease. In fact, the defendant does not assert that he is bound

by the terms of the new lease. We are unable to see that the negotiations with reference to the new lease is any way operated to excuse him from the obligation that he was under for the year beginning February 15, 1913.

The evidence sufficiently explains the reason why the repairs were not made before May 1, and before that date arrived the defendant had written the letter in which he stated that he was about to vacate the premises. Even if the repairs were not made before May 1, as the defendant seems to claim they should have been, the failure to make the repairs would not operate to release the defendant from the obligations of his lease. He might have some remedy by way of an action for damages or otherwise for the failure to carry out the agreement to make repairs, but certainly such failure would not violate the terms of a lease that was in effect before the agreement to repair was made.

It is claimed that there was an acceptance of the surrender of the lease by retaining the key that was sent to the plaintiff through the mail. We can not accept this claim. One can not escape the obligations of a lease merely by sending a key to the lessor through the mail, or leaving it under the door; nor is the lessor bound, under such circumstances, to return the key, which would, no doubt, be returned to him again. Parties are not obliged to pass keys, or other emblems of title or possession, back and forth in order to assert their legal rights to leased premises.

For the reasons stated, the judgment of the common pleas court will be affirmed.

RICHARDS, J., and KINKADE, J., concur.